Filed 2/22/23  P. v. Padua CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTURO GARCIA PADUA,<br><br>    Defendant and Appellant. | B316569<br><br>Los Angeles County<br>Super. Ct. No. A362244 |

APPEAL from an order of the Superior Court of Los Angeles County, David V. Herriford, Judge. Affirmed.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo, William H. Shin, and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

In 1981, a jury convicted Arturo Padua of two counts of murder, one count of robbery, one count of attempted robbery, and four counts of assault with intent to commit murder. The jury found true special circumstance allegations that the murders were committed during a robbery. After this Division affirmed Padua's conviction, the trial court struck the special circumstance findings. (*People v. Padua* (Nov. 4, 1982, B41150) [nonpub. opn.].)

In 2019, Padua filed a petition to vacate his murder convictions under Penal Code[1] section 1172.6,[2] arguing he couldn't now be convicted of first or second degree murder following the enactment of Senate Bill No. 1437 (S.B. 1437). The court appointed counsel for Padua, found he made a prima facie showing of entitlement to relief, and issued an order to show cause. Following an evidentiary hearing, the court denied Padua's petition, finding he could still be convicted of murder under a felony murder theory because he was a major participant in the underlying robberies and acted with reckless indifference to human life.

Padua appeals, arguing the court applied the wrong standard of proof when it found he was not entitled to relief under section 1172.6, and, in any event, the People failed to prove he was guilty of murder under a currently valid theory. We affirm.

---

[1] All undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

## BACKGROUND

### 1. The Murders

In September 1980, Padua and his brother, Victor, went "cruising" with their friend, Jaime Avena. Padua was driving, Victor was in the front passenger seat, and Avena was in one of the back seats. When Padua picked Avena up, he saw that Avena was carrying a rifle.

While Padua, Victor, and Avena were driving on Broadway Avenue near Pico Boulevard, a car pulled up next to them. Someone in the other car shouted "Florence" and threw a beer bottle at Padua's car. Avena fired several rounds from his rifle at the other car. Padua followed the other car.

Padua eventually crashed his car, so he and his cohorts began looking for one to steal. Near the corner of 21st Street and Main Street, they saw a pink Camaro parked near the side of the road. Avena opened the Camaro's front door, and Padua told the driver to hand over his keys. When the driver refused to get out of the car, Avena shot and killed him. Padua later told the police he struck the driver with a stick before Avena shot him. According to a witness at the scene, one of the assailants threw the passenger to the ground. As the passenger tried to run away, Avena shot him several times in the back, killing him too.

Padua, Victor, and Avena then took the Camaro and drove to Avena's house to pick up more ammunition. After leaving Avena's house, they set the Camaro on fire and started looking for another car to steal. While they were on foot, Avena fired multiple rounds at a passing car.

Padua and Victor then went to buy beer. When they returned, they saw a car exiting the freeway. Padua approached the driver's window and hit it with his beer bottle. Avena then fired multiple rounds at the car before it drove away.

3

Several minutes later, two police officers in an unmarked car saw Padua, Victor, and Avena in the street. As Padua and Victor ran away, Avena fired several shots at the officers, who returned fire. Padua, Victor, and Avena fled, but they were arrested days later.

## 2. The Jury Trial and Direct Appeal

Following a jury trial, Padua was convicted of two counts of murder (§ 187, subd. (a)), one count of robbery (§ 211), one count of attempted robbery (§§ 667, 211), and four counts of assault with intent to commit murder (§ 217). The jury also found true several special circumstance allegations, including an allegation that the murders were committed during a robbery. The court sentenced Padua to life in prison without the possibility of parole for the murder counts, plus 14 years and two months for the remaining counts.

In 1982, this Division affirmed Padua's conviction but remanded the matter to allow the trial court to exercise its sentencing discretion under section 1385. On remand, the court struck the jury's felony-murder special circumstance finding and resentenced Padua to concurrent terms of 26 years to life in prison for each murder count, plus eight years for the remaining counts.

## 3. The Resentencing Petition

In April 2019, Padua filed a resentencing petition under section 1172.6, alleging (1) he had been convicted of first or second degree murder under a felony murder or natural and probable consequences theory; (2) he was not the actual killer; (3) he did not, with the intent to kill, aid and abet the actual killer; (4) he was not a major participant in the underlying felony or did not act with reckless indifference to human life; and (5) he could

4

not be convicted of murder under a currently valid theory. The People opposed Padua's petition.

In May 2021, after appointing counsel for Padua, the court found he made a prima facie showing of entitlement to relief under section 1172.6 and issued an order to show cause.

The court held an evidentiary hearing on Padua's petition in September 2021. In support of their opposition, the People submitted a copy of the opinion from Padua's direct appeal, a copy of the transcript from Padua's preliminary hearing, and copies of Padua's and Victor's written confessions made during the police's investigation of the underlying murders. Padua didn't present any evidence at the hearing, nor did he object to any of the People's evidence.

The court took the matter under submission before issuing a written ruling denying Padua's petition. After applying the factors outlined in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the court concluded: "Based on the totality of circumstances, the court finds that evidence in the record of conviction indicates that [Padua] was a major participant in the underlying felony who acted with reckless indifference to human life. This evidence conclusively refutes [Padua's] claim that he is entitled to relief" under section 1172.6.

Padua appeals.

## DISCUSSION

### 1. S.B. 1437 and Section 1172.6

S.B. 1437 limited accomplice liability under the felony murder rule and eliminated the natural and probable consequences doctrine to ensure a person's sentence is commensurate with his or her culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Currently, the felony murder

5

rule applies only if the defendant: (1) was the actual killer; or (2) with the intent to kill, aided and abetted the actual killer's commission of murder; or (3) acted as a "major participant" in a felony listed in section 189 and acted with "reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3; § 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.)

S.B. 1437 also added section 1172.6, which provides people who have been convicted of murder under one of the now-invalid theories the opportunity to petition for resentencing. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) A petitioner is eligible for relief under section 1172.6 if (1) the complaint or information allowed the prosecution to proceed under a felony murder theory; (2) the petitioner was convicted of murder "following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted" of murder; and (3) the "petitioner could not presently be convicted" of murder "because of changes to Section 188 or 189." (§ 1172.6, subd. (a).)

If the petitioner files a facially sufficient petition, the court must appoint counsel. (§ 1172.6, subd. (b)(3).) Additionally, if the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and "hold a hearing to determine whether to vacate the murder … conviction and to recall the sentence." (*Id*., at subds. (c) & (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder … under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is

admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. … The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).)

"If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).) If the petitioner is eligible for relief, his "conviction shall be redesignated as the target offense or underlying felony for resentencing purposes, murder or attempted murder was charged generically, and the target offense was not charged." (*Id.*, at subd. (e).)

Despite Padua's assertion to the contrary, we review the trial court's factual findings following a section 1172.6, subdivision (d) hearing for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298, 301 (*Clements*); *People v. Garrison* (2021) 73 Cal.App.5th 735, 747; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985.) We review the entire record in the light most favorable to the court's order to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Accordingly, before we may set aside the court's order, it must be clear that " ' "upon no hypothesis whatever is there sufficient evidence to support [it]." ' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

7

**2.   Any error in the court's application of the standard of proof for section 1172.6, subdivision (d) hearings was harmless.**

Padua contends the court applied the wrong standard of proof when it found he was ineligible for resentencing at the section 1172.6, subdivision (d) hearing.[3] Whether the court applied the appropriate standard of proof is a question that we review de novo. (*Clements*, *supra*, 75 Cal.App.5th at p. 293.)

Padua takes issue with the court's use of the terms "indicate" and "show" while explaining its findings that he was a major participant in the underlying felonies who acted with reckless indifference to human life. Without citing any authority, Padua contends the court's use of such terms shows it applied a substantial evidence standard of review, as opposed to a beyond a reasonable doubt standard identified in section 1172.6, subdivision (d)(3). We disagree.

Nothing about the terms "indicate" and "show" suggest the court applied a particular standard of proof or standard of review. Those terms can be used as synonyms of "prove"—i.e., to describe what something, such as evidence, establishes, demonstrates, or signifies. (See Merriam-Webster.com Thesaurus, Merriam-Webster <https://www.merriam-webster.com/thesaurus/prove>

---

[3] As an initial matter, Padua asserts, and the People agree, the jury's felony-murder special circumstance findings that the trial court struck after remand from this court cannot serve as a basis to deny him relief under section 1172.6. (See *People v. Strong* (2022) 13 Cal.5th 698, 710, 720.) However, Padua points to nothing in the record, nor have we found anything in the record, suggesting the trial court relied on the stricken special circumstance findings when it found he was ineligible for resentencing relief at the section 1172.6, subdivision (d)(3) hearing. We therefore need not address this argument any further.

[as of Feb. 14, 2023], archived at <https://perma.cc/YY7C-YZHA>.)

Nor does the court's statement that "there is *sufficient evidence* in the record to conclude that Petitioner exhibited a reckless indifference to human life" demonstrate the court applied a substantial evidence standard of review, as opposed to a beyond a reasonable doubt standard of proof. The phrase "sufficient evidence" merely describes the amount or quality of evidence that the court determined supported a particular finding or conclusion. That phrase can be used by a trier of fact when making a factual finding in the first instance under any standard of proof, or it can be used by a reviewing court when applying a standard of review, such as the substantial evidence or abuse of discretion standard. Indeed, in making its findings on Padua's petition, the court never mentioned the jury's findings or suggested that there was sufficient evidence such that the jury could have found Padua was a major participant in the underlying felonies who acted with reckless indifference to human life.

To be sure, the court didn't state that it was applying the beyond a reasonable doubt standard of proof in its written ruling denying Padua's petition. But neither did the court state it was applying a substantial evidence standard of review or any lesser burden of proof than the beyond a reasonable doubt standard. And, at the hearing on Padua's petition, the court correctly stated that the People carried the burden of proof to establish Padua isn't eligible for relief. Because we must presume a court's ruling is correct in the absence of an affirmative showing of error, we reject Padua's claim that the court applied the wrong standard of proof when it denied his resentencing petition. (*People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll

9

intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "].)

In any event, even if we were to assume the court applied the wrong standard of proof, that error was harmless. That is, it is not reasonably probable Padua would have received a more favorable outcome had the court applied the correct standard of proof identified in section 1172.6, subdivision (d)(3) because overwhelming evidence establishes Padua was a major participant in the underlying robbery who acted with reckless indifference to human life. (See *People v. Lewis* (2021) 11 Cal.5th 952, 973–974 [denial of section 1172.6 petition is evaluated under standard of prejudice discussed in *People v. Watson* (1956) 46 Cal.2d 818].)

S.B. 1437 amended section 189's definition of felony murder by incorporating section 190.2, subdivision (d)'s requirements for proving a felony-murder special-circumstance allegation. Now, to support a felony-murder conviction, the People must prove that the killing was committed in the perpetration of, or during an attempt to perpetrate, one of several enumerated felonies, including robbery, and that the defendant either: (1) "was the actual killer;" (2) "was not the actual killer, but, with the intent to kill," aided and abetted the killer in the commission of the murder; or (3) "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subds. (a) & (e).)

In *Banks* and *Clark*, the California Supreme Court discussed several factors that should be considered in determining whether a defendant was a major participant in the underlying felony who acted with reckless indifference to human life. (*Banks*, *supra*, 61 Cal.4th at p. 803 [discussing major participant factors]; *Clark*, *supra*, 63 Cal.4th at pp. 618–623

[discussing reckless indifference factors].) As the court explained, no single consideration is necessary, " 'nor is any one of [the factors] necessarily sufficient.' " (*Clark*, at p. 618, quoting *Banks*, at p. 803.)

*Banks* identified the following factors for determining whether a defendant was a major participant in the underlying felony: (1) the role the defendant had in planning the target crime that led to the victim's death; (2) the role the defendant had in supplying or using lethal weapons; (3) the defendant's awareness of the particular dangers posed by the nature of the crime, the weapons used, or the past experience or conduct of the other participants; (4) whether the defendant was present at the scene of the killing and, if so, whether he was in a position to facilitate or prevent the death; (5) whether the defendant's actions or inactions at the scene of the killing played a particular role in the victim's death; and (6) the defendant's conduct after lethal force was used. (*Banks*, *supra*, 61 Cal.4th at p. 803.)

As for determining whether a defendant acted with "reckless indifference" to human life, courts must look to whether the defendant knowingly engaged in criminal activities known to carry a grave risk of death. (*Banks*, *supra*, 61 Cal.4th at p. 801; see also *Clark*, *supra*, 63 Cal.4th at pp. 616–617.) "Reckless indifference" "encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her." (*Clark*, at p. 617.) The objective element looks to "what 'a law-abiding person would observe in the actor's situation.' [Citation.]" (*Ibid.*)

*Clark* discussed the following factors to be considered in determining whether a defendant acted with reckless indifference to human life: (1) the defendant's awareness that a gun or other weapon would be used during the target offense; (2) the defendant's presence at the crime and whether he had an

11

opportunity to prevent the crime or aid the victim; (3) the duration of the felony, including how long the defendant and the victim interacted before the killing; and (4) the defendant's apparent efforts to reduce the risk of violence during the commission of the target offense. (*Clark*, *supra*, 63 Cal.4th at pp. 618–623.)

Here, Padua's murder convictions arose out of the robbery of the pink Camaro, during which the car's driver and passenger were killed. As we explain, overwhelming evidence supports the court's finding that Padua was a major participant in that felony who acted with reckless indifference to human life.

As to the major participant factors outlined in *Banks*, Padua helped plan the robbery. He told the police that after he crashed his car, he and Avena looked for another car that they could steal. Once they saw the Camaro pull to the side of the road, Padua and Avena ran toward it. Avena pointed the rifle at the driver while Padua told the driver to hand over the car's keys.

Padua also was aware that a gun was likely to be used during the robbery. Although Padua didn't supply the rifle that Avena used to kill the victims, Padua told the police he was aware that Avena was carrying a rifle and had fired it several times at another occupied car not long before they approached the Camaro. Thus, when he decided to steal the Camaro, Padua was aware of the potential lethal danger Avena posed to the victims.

Most importantly, Padua was not only present when Avena killed the victims, but he also facilitated at least one of the occupants' deaths. Padua admitted that he struck the car's driver with a stick to make him get out of the car. Immediately after the driver got out of the car, Avena shot and killed him. Victor provided a similar account, telling the police that Padua struck the driver with a stick shortly before Avena killed him.

12

Finally, Padua did nothing to help the victims after Avena used lethal force. Padua didn't try to prevent Avena from shooting the passenger after Avena shot the driver, nor did Padua provide, or seek out, any aid for the victims. Instead, Padua, along with his cohorts, drove off with the Camaro to continue their terror spree.

Many of these facts also establish Padua acted with reckless indifference to human life under the factors discussed in *Clark*. (*Clark*, *supra*, 63 Cal.4th at pp. 614–615 [there is often " 'significant[ ] overlap' " between the *Banks* and *Clark* factors].) As we just discussed, Padua told the police that he was aware Avena was armed with a rifle and had fired that gun several times shortly before they attacked the victims. It is undisputed that Padua was present at the scene of the killing but failed to offer any aid to the victims. Instead, as we explained above, Padua actively participated in the robbery, was present when the victims were killed, and helped facilitate at least one of their deaths. (*People v. Garcia* (2020) 46 Cal.App.5th 123, 148 ["Presence at the scene of the murder is a particularly important aspect of the reckless indifference inquiry."].) Nothing in the record suggests Padua tried to deescalate the use of violence or otherwise reduce the risk that the victims would be killed.

In short, overwhelming evidence supports a finding that Padua was a major participant in the underlying robbery and acted with reckless indifference to human life. Thus, any error in the court's application of the standard of proof at the section 1172.6, subdivision (d) hearing was harmless. Padua's challenge to the sufficiency of the evidence also fails because of the overwhelming evidence that he was a major participant who acted with reckless indifference to human life.

## DISPOSITION

The order denying Padua's section 1172.6 petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.

WE CONCUR:

EDMON, P. J.

NGUYEN, (KIM) J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.